# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| CALVIN GASKEY, et al.,<br>    Plaintiffs,<br><br>v.<br><br>FULTON BELLOWS, LLC., et al.,<br>    Defendants. | )<br>)<br>)<br>)    No. 3:05-CV-540<br>)    (Phillips)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiffs are former employees of the defendants and bring this action alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29, U.S.C. § 621 *et seq.* Plaintiffs allege that defendant Fulton Bellows, LLC, engaged in employment practices that, while neutral on their face, resulted in a disparate impact on individuals age 40 and over.

Defendants deny plaintiffs' claims and assert that a review of the workforce Fulton Bellows, LLC hired shows that it did not use age to reject applicants, and that plaintiffs cannot show a statistically significant disparity in the hire rate of older applicants. Thus, defendants move for summary judgment asserting that there are no genuine issues as to material facts, and that they are entitled to judgment as a matter of law on all of plaintiffs' claims. For the reasons which follow, defendants' motion for summary judgment will be granted, and this action will be dismissed.

**Factual Background**

The 138 plaintiffs are grouped into four groups based on their differing statuses with respect to the date of their separation from Fulton Bellows & Components, Inc., and based upon the alleged reason for their continued separation from the company. Group 1 employees are those employees who were released from employment by the company on or about August 2, 2004 and later unsuccessfully sought employment with Fulton Bellows, LLC. Group 2 employees are those employees who were released from employment by the company on or about August 2, 2004, and did not later seek employment with Fulton Bellows, LLC. Group 3 employees are those employees whose employment with the company was terminated prior to August 2, 2004, and later unsuccessfully sought employment with Fulton Bellows, LLC. Group 4 employees are those employees whose employment with the company was terminated prior to August 2, 2004 and did not later seek employment with Fulton Bellows, LLC.

Defendant Fulton Bellows, LLC (FBLLC) is a Delaware limited liability company. Defendant Fulton Bellows & Components, Inc. (FBCI) is also a Delaware corporation. FBCI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 10, 2003, in the United States Bankruptcy Court for the Eastern District of Tennessee, Northern Division. An order was entered by the Bankruptcy Court on July 29, 2004, authorizing the sale of assets of FBCI to FBLLC. FBCI laid off all of its remaining employees on or about August 2, 2004. FBLLC acquired the assets of FBCI on or about

August 3, 2004. The bankruptcy case of FBCI was converted from Chapter 11 to Chapter 7 of the Bankruptcy Code by order of the Bankruptcy Court on October 6, 2004.

Defendant Morris Capital Management, LLC is a Tennessee limited liability company. Morris is the sole general partner of Special Situations Fund, L.P. (SSF), a Tennessee limited partnership. SSF owns ninety-six percent (96%) of the membership interests of FBLLC. Morris states it has never owned any interest in either FBLLC or FBCI, and neither FBLLC nor FBCI has ever owned any interest in Morris. Morris has never made or participated in the hiring or termination decisions made with respect to employees of either FBLLC or FBCI. Morris has never participated in, or been a part of, a business enterprise with either FBLLC or FBCI.

Through articles and job postings in the *Knoxville News Sentinel*, FBLLC invited all former FBCI employees, as well as the public at large, to apply for employment. Through the initial start-up phase of FBLLC, applications for employment were accepted and screened through the State Career Office of the Tennessee Department of Employment Security (DES). Applicants completed a general/generic employment application form used by DES.

After the initial start-up phase, applications were accepted and screened directly at the FBLLC facility. FBLLC used its own application for employment form. Neither the DES's employment application nor FBLLC's application requested information

concerning an applicant's age, prior union membership or history of healthcare insurance costs.

Plaintiffs applied for employment during August, September and October of 2004. During those months, 507 individuals applied for employment with FBLLC. 170 of the 507 applicants were under age 40. The other 337 applicants (which included 48 plaintiffs) were 40 years or older. FBLLC hired 45 of the 170 applicants under age 40. FBLLC hired 76 of the 337 applicants age 40 and older. FBLLC hired 15 individuals who had been in a job position included in a bargaining unit represented by either the United Steel Workers of America, Local 5431 or the International Association of Machinists and Aerospace Workers, Local 555, when they were employed by FBCI.

TSI is one of the employment agencies hired by FBLLC. TSI first asked any person calling about employment at FBLLC whether that person had worked for FBCI. The potential employee was then told that FBLLC would be contacted to determine whether the employee should fill out an application with TSI. Plaintiffs state that former workers of FBCI were told they would not be hired at FBLLC. Plaintiffs contend that this employment practice by FBLLC intended to not only discourage plaintiffs from applying with the company but also made such application futile.

Linda Knight, Human Resources Manager of FBLLC, stated, via affidavit, that upon hearing about the situation with TSI, she promptly contacted the agency to stress that

"they were supposed to treat any prior employee, the contact, same as any non-Fulton Bellows and Components employee, go through the exact same hiring process." She further stated that TSI only was authorized to check on whether former employees were considered good workers at FBCI or not, while still directing these individuals to apply for employment. FBLLC later terminated TSI's services when it heard of potential confusion in the process.

Defendants have moved for summary judgment on all plaintiffs' claims, and have moved to strike portions of plaintiffs' affidavits filed in opposition to defendants' motion for summary judgment.

**Motion to Strike**

Defendants move to strike certain paragraphs from plaintiffs' affidavits filed in support of plaintiffs' response to defendants' motion for summary judgment on the grounds that the affidavits contain statements which do not meet the standards of Rule 56(e) of the Federal Rules of Civil Procedure. Specifically, defendants state the affidavits contain (1) testimony not based on facts personally known to the affiant, (2) conclusions or opinions without supporting evidence, and (3) hearsay. Plaintiffs respond that the affidavits are not offered as proof that the defendant was discriminating in its hiring policy, but to show the former employees' belief that applying for employment with the new company would be futile. Yet, to defeat summary judgment plaintiffs must show evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices,

and [that] . . . any application would have been futile and perhaps foolhardy." *Bacon v. Honda of America Mfg. Inc.,* 370 F.3d 565, 576 (6th Cir. 2004). Thus, defendants state it is irrelevant to suggest that certain plaintiffs had a perception of defendant's hiring practices based on conclusory allegations and hearsay.

An affidavit that does not satisfy the requirements of Rule 56(e) is subject to a motion to strike. So far as relevant, that rule provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed.R.Civ.P. 56(e). Hence, "all affidavits, regardless of the author, must be made on personal knowledge and set forth facts that would be admissible in evidence." *Brainard v. American Skandia Life Assur. Corp.,* 432 F.3d 655, 667 (6th Cir. 2005). In other words, the affidavits "must concern facts as opposed to conclusions, assumptions, or surmise." *Perez v. Volvo Car Corp.,* 247 F.3d 303, 316 (1st Cir. 2001). "It is the burden of the party submitting the affidavit to show circumstances indicating the witness has based the statement on personal knowledge." *Long v. Proctor & Gamble Mfg. Co.,* 2005 WL 1631033 at *1 (W.D.Tenn. 2005).

In this case, plaintiffs have submitted the affidavits of 45 of the plaintiffs. A number of the affidavits contain statements not supported by admissible facts. For example, affiant Billy Ray Finger alleges that "to apply for a job that I knew would not rehire me would have been pointless." Similarly, affiant Corbin L. Johnson avers, "I saw no point

in reapplying for employment with Fulton Bellows; if they weren't hiring former employees, why bother to reapply?" Affiant Doyle Gilbert states, "If the company had been consistent in its layoff recall policy, I should have been called and should have received my job back." Such statements and unsupported conclusions are not competent evidence in the contest of summary judgment. Paragraphs which contain nothing more than legal conclusions and speculation, without factual support will be stricken in accordance with the dictates of Rule 56(e). The court has reviewed the affidavits in question and finds that the following paragraphs should be stricken because they are conclusory and not based on personal knowledge and/or observation:

| Affiant | Paragraphs |
|---|---|
| Bettye R. Horton | ¶¶ 11,13 |
| Billy Ray Finger | ¶¶ 6,7,8,9,11 |
| Burl Norris | ¶¶ 6,7,8 |
| Calvin Lee Gaskey | ¶¶ 9,10,12 |
| Clarence Henderson | ¶¶ 6,7,9,10 |
| Connie Lynn Shown | ¶¶ 8,9 |
| Corbin L. Johnson | ¶¶ 7,8,9,10 |
| Deborah K. Cupp | ¶¶ 8,9,11,12 |
| Donnie Reed | ¶ 3 |
| Doris M. Mikes | ¶¶ 8,10 |
| Doug Potter | ¶¶ 8,9 |
| Doyle R. Gilbert | ¶¶ 8,9 |
| Edwin M. Clark | ¶¶ 8,9 |
| Elmer D. Rogers | ¶¶ 8,9,11 |
| Francis L. Hall | ¶¶ 8,9 |
| Fred H. Green | ¶¶ 6,7 |
| Fred House | ¶ 20 |
| Glenn A. Atkins | ¶ 8 |
| Glenn Maples | ¶ 7 |
| Harold K. Moore | ¶ 6 |
| Irene M. Clinton | ¶¶ 8,10,11 |
| James Robert Edwards | ¶¶ 7, 8 |
| Jeffrey L. Elliot | ¶¶ 5, 6 |
| Jim C. Love day | ¶¶ 6,9,13,14,15 |
| Jimmy Ray Headrick | ¶¶ 10,11 |
| Joe B. Reed | ¶¶ 7,8 |

| | |
|---|---|
| John L. Delaney | ¶¶ 13,14 |
| Kelvin M. White | ¶¶ 8,9 |
| Laretha S. Moore | ¶¶ 8,9 |
| Larry Eugene Everett | ¶¶ 8, 9 |
| Marsha Renee Everett | ¶¶ 11,12 |
| Paul Jeffrey Quinn | ¶¶ 8,9,11 |
| Paul L. Sharp | ¶ 6 |
| Ralph Browning | ¶¶ 7,10 |
| Richard E. Elliott | ¶¶ 7,8 |
| Roy Watson | ¶¶ 7,8 |
| Samuel J. Barbra | ¶¶ 9,10 |
| Scott Wayne Womack | ¶¶ 8,9 |
| Steve D. Woosley | ¶¶ 9,10 |
| Thomas C. Black | ¶¶ 6,7,8 |
| Tony Wayne Broyles | ¶¶ 7,8 |

Defendants also aver that all plaintiffs' affidavits contain inadmissible hearsay. For example, the affidavit of Billy Ray Finger contains the statement, "I was told Fulton Bellows told them not to hire their former employees, so I never tried to apply." This statement not only is double hearsay, but also fails to identify any of the speakers allegedly involved. Many of the affidavits submitted by plaintiffs likewise involve multiple levels of hearsay, as well as unidentified sources of "information." Plaintiffs cannot rely upon inadmissible hearsay in their effort to defeat summary judgment. *See Bailey v. Youth Villages, Inc.,* 2006 WL 3378489 at *2 (M.D.Tenn. Apr. 7, 2006) (striking affidavit paragraphs based on hearsay); *see also Valecko v. Sterling, Inc.,* 89 F.3d 837 (6th Cir. 1996) (affirming summary judgment and district court's striking of hearsay from affidavits). Upon review the court finds the following paragraphs should be stricken from plaintiff's affidavits because they contain inadmissible hearsay:

| | |
|---|---|
| Bettye R. Horton | ¶¶ 8.9 |
| Billy Ray Finger | ¶ 5 |

| | |
|---|---|
| Burl Norris | ¶ 6 |
| Charles Robinson | ¶ 5 |
| Clarence Henderson | ¶ 5 |
| Connie Lynn Shown | ¶ 7 |
| Corbin L. Johnson | ¶ 6 |
| David Joe Hatcher | Response to Question 6[1] |
| Deborah K. Cupp | ¶¶ 7,8 |
| Donnie Reed | ¶ 3 |
| Doris M. Mikes | ¶ 7 |
| Doug Potter | ¶¶ 6,7,12 |
| Doyle R. Gilbert | ¶ 5 |
| Edwin M. Clark | ¶ 7 |
| Fred House | ¶ 22 |
| Glenn A. Atkins | ¶ 6 |
| Glenn Maples | ¶ 6 |
| Harold K. Moore | ¶ 4,7 |
| Irene M. Clinton | ¶ 6 |
| James Robert Edwards | ¶ 6 |
| Jeffrey L. Elliot | ¶ 4 |
| Jim C. Love day | ¶¶ 11,12 |
| Jimmy Ray Headrick | ¶ 9 |
| Joe B. Reed | ¶ 5 |
| John L. Delaney | ¶ 6,7,8 |
| Kelvin M. White | ¶ 7 |
| Larry Eugene Everett | ¶¶ 6,7 |
| Marsha Renee Everett | ¶¶ 8,9,10 |
| Paul Jeffrey Quinn | ¶¶ 6,7 |
| Paul L. Sharp | ¶ 6 |
| Richard E. Elliott | ¶ 6 |
| Roy Watson | ¶ 6 |
| Samuel J. Barbra | ¶ 5 |
| Scott Wayne Womack | ¶¶ 5,9 |
| Steve D. Woosley | ¶¶ 6,8 |
| Thomas C. Black | ¶ 4 |
| Tony Wayne Broyles | ¶¶ 5,6 |

---

[1] The proposed affidavit of Mr. Hatcher appears to be handwritten responses to a letter from plaintiffs' counsel. It is not signed or notarized nor does it give any indication that it is Mr. Hatcher who is actually responding. This "affidavit" will be stricken in its entirety from plaintiffs' response.

**Motion for Summary Judgment**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Plaintiffs have requested oral argument regarding the motion for summary judgment. The parties have filed extensive briefs pertaining to the motions for summary judgment in which they have fully briefed all of the issues and submitted record evidence in support of the parties' positions. The court has reviewed the briefs and evidence submitted, and does not feel that oral argument is necessary. Therefore, plaintiffs' motion for oral argument is denied.

Plaintiffs alleged that FBLLC's refusal to hire former FBCI employees, who were all over the age of 40, had a disparate impact on older applicants in violation of the ADEA. It is unlawful under the ADEA for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a claim under the ADEA, a plaintiff may either produce direct evidence of age discrimination or rely upon circumstantial evidence that would permit an inference of discrimination under the burden-shifting method outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Here, plaintiffs rely on circumstantial evidence to establish their age discrimination claims asserted under the ADEA.

Disparate impact claims penalize employment practices that are "fair in form but discriminatory in operation." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431 (1971). Disparate impact cases focus on the "effects" of the action on the employee rather than the "motivation" for the action of the employer. *Smith v. City of Jackson,* 544 U.S. 228, 237 (2005). To establish a *prima facie* case of disparate impact, the plaintiff must (1) identify a specific challenged employment practice, and (2) prove that the practice had an adverse impact on a protected class through relevant statistical analysis. *Albemarle Paper Co. v. Moody* 442 U.S. 405, 425 (1975). Under Title VII, if the plaintiff succeeds in making a *prima facie* case, the defendant must provide a business justification for the challenged practice. *Griggs,* 401 U.S. at 432. If the employer succeeds, the plaintiff must then show

that alternative employment practices could serve the employer's business purpose without the discriminatory impact. *Albemarle,* 422 U.S. at 425.

### Claims against Fulton Bellows & Components, Inc.

In their response to defendants' motion for summary judgment, plaintiffs state that they do not contest summary judgment as to defendant Fulton Bellows & Components, Inc. Accordingly, summary judgment will be granted to Fulton Bellows & Components, Inc. on all plaintiffs' claims.

### Claims against Morris Capital Management, LLC

Plaintiffs do not allege that they were ever employed by Morris Capital, or that they ever applied for employment with Morris Capital, or that they ever failed to apply for employment with Morris Capital because to do so would have been futile. Instead, the sole basis for the alleged liability of Morris Capital to plaintiffs is plaintiffs' allegation that Morris Capital is the alter ego of FBLLC and was part of the same business enterprise.

Each of the defendants is a separate and distinct legal entity. FBLLC is a Delaware limited liability company, and Morris Capital is a Tennessee limited liability company. Plaintiffs have not shown that Morris Capital has ever owned any interest in FBLLC. The only connection between Morris Capital and FBLLC is that Morris is the general partner of SSF, a Tennessee limited partnership that owns ninety-six percent (96%) of the membership interests of FBLLC.

With regard to the hiring of employees by FBLLC, plaintiffs have not shown that Morris Capital ever made or participated in these decisions. Plaintiffs have presented no factual support for their allegations that Morris is the alter ego of FBLLC. As such, there is no legal or factual basis to hold Morris Capital liable to the plaintiffs and summary judgment will be granted to Morris Capital.

Claims against Fulton Bellows, LLC

Plaintiffs allege that FBLLC's refusal to hire any former FBCI employees, while neutral on its face, resulted in a disparate impact on individuals age 40 and over in violation of the ADEA. FBLLC argues that plaintiffs cannot show a statistically significant disparity in the hire rate of older applicants.

First, FBLLC's contends that plaintiffs in Groups 2 and 4 lack standing to assert a disparate impact claim based on FBLLC's hiring practices because they failed to apply for employment. The basic principles of standing mandate that a plaintiff have a "personal stake in the outcome of the controversy" and that the plaintiff "must have suffered some real or threatened injury." *Bacon v. Honda of American Mfg, Inc.,* 370 F.3d 565, 577 (6th Cir. 2004) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1985). Consequently, a "plaintiff arguing a disparate impact theory must show that the challenged policy disadvantaged him in some fashion." *Id.* Even assuming *arguendo* that FBLLC maintained employment practices that disparately affected older workers, the plaintiffs in Groups 2 and 4 would lack standing to challenge these practices because they never sought employment.

*See El-Zayaty v. University of Findlay*, 2006 WL 346392 at *6 (N.D.Ohio Feb. 13, 2006) (A plaintiff "cannot complain about not getting a job for which he did not apply."). Ninety-seven (97) of the 138 plaintiffs failed to apply for employment with FBLLC.

Plaintiffs in Groups 2 and 4 seek to excuse their failure to apply for employment by arguing that "they reasonably believed that seeking employment with FBLLC would be futile." The futility doctrine has its roots in *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324 (1977), in which the Supreme Court carved out an exception for certain Title VII plaintiffs who had not applied for positions but sought an award of retroactive seniority. The Court explained:

> The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection.
>
> If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

*Id.* at 365-66. The futility doctrine has since been extended to aid ADEA plaintiffs who failed to apply for a position. *See Bennett v. Quark, Inc.,* 258 F.3d 1220, 1228 (10th Cir. 2001). Such a plaintiff may establish a *prima facie* case of age discrimination upon a showing that (1) he would have applied "but for accurate knowledge of an employer's discrimination" and (2) that he would have been discriminatorily rejected had he actually applied. *Id.*

The Sixth Circuit has held that "[a]lthough it is true that failure to apply for a [position] may be excused, the circumstances must reveal 'overwhelming evidence' of pervasive discrimination in all aspects of [the employer's] internal employment practices, and [that] ... any application would have been futile and perhaps foolhardy." *Bacon,* 370 F.3d t 576 (quoting *Harless v. Duck,* 619 F.3d 611, 617-18 (6th Cir. 1980)). Demonstrating just how narrow this exception is, the Sixth Circuit ruled in *Bacon* that plaintiffs could not "come close to meeting this standard" where other members of the protected class received just "some of the promotions" at issue. *Id.* at 576.

In the instant case, FBLLC hired 76 individuals in the protected group, showing that a large number of former employees, as well as a large number of employees in the protected class, did not find it futile to apply. Because the plaintiffs in Groups 2 and 4 cannot present the "overwhelming evidence" required to excuse their failure to apply for employment, these plaintiffs lack standing to challenge FBLLC's hiring practices.

Next, defendants contend that plaintiffs cannot establish a claim of disparate impact discrimination. Disparate impact analysis is used when an employer's facially neutral policy adversely affects a protected class. *Bacon,* 370 F.3d at 576 (citing *Griggs v. Duke Power Co.,* 401 U.S. 424, 431 (1971)). To show disparate impact, plaintiffs must "demonstrate a connection between the challenged practices and the resulting disparities between protected and non-protected classes." *Id.* (citing *Wards Cove Packing Co. v. Antonio,* 490 U.S. 642, 657 (1989)). The Supreme Court has recently ruled that it is possible for plaintiffs to assert a disparate impact claim under the ADEA, although "the scope of disparate impact liability under the ADEA is narrower than under Title VII." *Smith v. City of Jackson,* 544 U.S. 228, 239 (2005). The Sixth Circuit applies the following analysis to disparate impact claims:

> In order to establish a *prima facie* case of age discrimination by showing disparate impact, the plaintiff must first identify a specific employment practice being used by the employer.... Next, the plaintiff must show an adverse effect caused by the employment practice by offering "statistical evidence of a kind and to a degree sufficient to show that the practice in question had caused the exclusion of applicants for jobs ... because of their membership in a protected group.

*Abbott v. Federal Forge, Inc.,* 912 F.2d 867, 872 (6th Cir. 1990) (quoting *Watson v. fort Worth Bank and Trust,* 487 U.S. 977, 994 (1988)). The conventional way to do this is "to compare representation of the protected class in the applicant pool with representation in the group actually accepted from the pool. *Golden v. City of Columbus,* 404 F.3d 950, 964 (6th Cir. 2005). If the statistical disparity is significant, then the plaintiff is deemed to have made out a *prima facie* case." *Id.*

Once a plaintiff establishes a *prima facie* case, the remaining analysis of a disparate impact claim under the ADEA differs from that used under Title VII. While a defendant in a Title VII case must articulate a "business necessity" for its challenged practice, this standard does not apply under the ADEA because of statutory language "precluding liability if the adverse impact was attributable to a nonage factor that was 'reasonable.'" *Smith,* 544 U.S. at 239. Instead, the defendant need only articulate a "reasonable" justification for its challenged practice, at which point "the burden shifts back to the plaintiff to show ... that the employer's reason is a pretext for discrimination." *See Abbott,* 912 F.2d at 872 (citing *Watson,* 487 U.S. at 998). Finally, unlike the Title VII "business necessity" test, which asks whether "there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement." *Smith,* 544 U.S. at 243.

Plaintiffs have identified two employment practices that they allege disparately impacted individuals covered by the ADEA. First, plaintiffs allege that FBLLC blacklisted applicants who had been members of a union or whose healthcare insurance costs were perceived as high. However, the record shows that FBLLC did not refuse to hire applicants based on these characteristics. FBLLC hired 15 applicants who had a history of union membership, and after the initial hiring phase, hired another 11 former FBCI employees who were previously represented by a union. In addition, FBLLC's hiring of 76 individuals age 40 and older shows that it did not blacklist applicants based on a perception that workers over 40 consume more health care and therefore have higher health care costs.

Thus, plaintiffs have failed to establish a *prima facie* case of disparate impact discrimination.

Moreover, plaintiffs cannot present "statistical evidence of a kind and to a degree sufficient to show that the practices in question caused the exclusion of applicants for jobs ... because of their membership in a protected group." *Watson,* 487 U.S. at 994. Federal courts frequently analyze disparate impact claims using the "four-fifths rule" codified in the *Uniform Guidelines on Employee Selection Procedures.* This rule provides that:

> A selection rate for any [protected] group which is less than four-fifths (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by federal enforcement agencies as evidence of adverse impact.

29 C.F.R. 1607.4(d).

Here, plaintiffs have not shown adverse impact based on the four-fifths rule. Applicants age 40 and over were hired at a rate within the four-fifths rule (85%) of that for younger applicants. Rather, plaintiffs submit a statistical analysis in which they attempt to add 67 individuals age 40 and older to the applicant pool based on their argument that it would have been futile for these individuals to apply for employment. It is undisputed, however, that some 337 individuals age 40 and older did apply for employment, and FBLLC hired 76 of these applicants. Plaintiffs next seek to subtract 15 individuals age 40 and older from the list of employees FBLLC hired based on their assertion that FBLLC had no choice

but to hire these employees into "critical positions."  Plaintiffs, though, fail to define "critical positions" or present any case law supporting their position that these individuals should be excluded from the applicant flow analysis.  Under these circumstances, plaintiffs cannot prove that their case fits within the "limited circumstances " that might support abandoning the standard applicant flow analysis.  Plaintiffs bear the burden of establishing their claim.  Because plaintiffs cannot show a significant statistical disparity disfavoring older workers, summary judgment will be granted to defendants and this action will be dismissed.

## **Conclusion**

For the reasons stated above, the court finds that defendants are entitled to judgment as a matter of law on plaintiff's claims of discrimination under the ADEA.  Accordingly, defendants' motion for summary judgment [Doc. 14] will be granted,  and this action will be dismissed.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge